## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Citadel Watford City Disposal Partners, L.P., *et al.*,[1] | Case No: 15-11323 (KJC) |
| Debtors. | (Jointly Administered) |
| ------------------------------------------------------- | |
| Citadel Watford City Disposal Partners, L.P., *et al.* | Adv. Proceeding No. 16-51557 (KJC) |
| Plaintiffs, | |
| v. | **No hearing will be held unless requested or ordered by the Court.** |
| Peter Simons, | **Objection Deadline: May15, 2017 at 4:00 p.m.** |
| Defendant. | |

## MEMORANDUM OF LAW IN SUPPORT OF PETER SIMONS' MOTION TO REOPEN ADVERSARY PROCEEDING AND TO VACATE ENTRY OF DEFAULT [DOCKET #5] AND DEFAULT JUDGMENT [DOCKET #7]

### Filed on: May 1, 2017

_____

| **The Law Office of James Tobia** | **Jones & Associates** |
|---|---|
| James Tobia, Esq. | Roland Gary Jones, Esq. |
| 1716 Wawaset Street | 1745 Broadway, 17th Floor |
| Wilmington, DE 19806 | New York, NY 10019 |
| Tel. (302) 655-5303 | Tel. (347) 862-9254 |
| Fax (302) 656-8053 | Fax (212) 202-4416 |
| Email: jtobia@tobialaw.com | Email: rgj@rolandjones.com |

---

[1]     The Debtors and the last four digits of their respective tax identification numbers are: Citadel Energy Services, LLC (7762); Pembroke Fields, LLC (0341); Citadel Energy SWD Holdings, LLC (5266); Citadel Watford City Disposal Partners, LP (1520). The mailing address for each Debtor is: c/o Gavin/Solmonese LLC, 919 N. Market St., Ste. 600, Wilmington, DE 19801.

## TABLE OF CONTENTS

| Section | Page No. |
|---|:---:|
| INTRODUCTION | 5 |
| | |
| PROCEDURAL BACKGROUND | 6 |
| | |
| FACTUAL BACKGROUND | 7 |
| | |
| I. THE RELATIONSHIP BETWEEN THE DEBTORS AND THE DEFENDANT | 7 |
| | |
| II. EVENTS LEADING TO THE DEFAULT JUDGMENT | 8 |
| | |
| SUMMARY OF RELIEF REQUESTED | 10 |
| | |
| ARGUMENT IN FAVOR OF RE-OPENING THE ADVERSARY PROCEEDING | 11 |
| | |
| I. APPLICABLE LAW | 11 |
| | |
| II. THE PLAINTIFF WILL SUFFER NO PREJUDICE IF THE CASE WAS REOPENED AND THE DEFAULT JUDGMENT IS VACATED | 13 |
| | |
| III. THE DEFENDANT HAS MERITORIOUS DEFENSES | 14 |
| | |
| A. THE TRANSFER IS A PAYMENT OF AN ANTECEDENT DEBT AND THEREFORE, THE DEBTORS WOULD BE UNABLE TO ESTABLISH THE ELEMENTS OF A FRAUDULENT CONVEYANCE UNDER U.S.C. §548 | 15 |
| | |
| B. ADDITIONAL DEFENSES | 19 |
| | |
| IV. THE DEFENDANT'S FAILURE TO RESPOND TO THE COMPLAINT WAS DUE TO EXCUSABLE NEGLECT, AND WAS NOT WILLFUL | 19 |
| | |
| V. EQUITY CONSIDERATIONS FAVOR THE DEFENDANT | 20 |
| | |
| CONCLUSION | 20 |

# TABLE OF AUTHORITIES

## I.    APPLICABLE LAW

Statute:
Federal Rule of Civil Procedure 60

Cases:
1.    *Pioneer Investment Services Co. v. Brunswick Associates L.P., 507 U.S. 380, 113 S. Ct. 1489, 123 L. Ed. 2D 74 (1993)*
2.    *Church-El v. Bank of N.Y.*, Civil No. 11-877 (D. Del., 2013)
3.    *United States v. $55,518.55 in U.S. Currency*, 728 F.2d 192, 194-95 (3d Cir. 1984)
4.    *Enron Oil Corp. v. Diakuhara,* 10 F.3d 90 (2nd Cir. 1993)
5.    *C.K.S. Eng'rs, Inc. v. White Mountain Gypsum Co*., 726 F.2d 1202 (7th Cir. 1984)
6.    *Gold Kist, Inc. v. Laurinburg Oil Co*., 756 F.2d 14, 19 (3d Cir. 1985)
7.    *Zazzali v. 1031 Exchange Group LLC et al. (In re DBSI)*, 501 B.R. 37 (Bankr. Ct. D. Del. 2013)

## II.    THE PLAINTIFF WILL SUFFER NO PREJUDICE IF THE CASE WAS REOPENED AND THE DEFAULT JUDGMENT IS VACATED

Cases:
1.    *JPMorgan Chase Bank, N.A. v. Pandolfelli (In re Pandolfelli),* 2012 U.S. Dist. LEXIS 19223, 6-8 (D.N.J. Feb. 14, 2012)
2.    *Smith v. PAC Int'l Logistics Co. (In re Advanced Mktg. Servs.)*, 448 B.R. 321, 327-330 (Bankr. D. Del. 2011)
3.    *Zazzali v. 1031 Exchange Group LLC et al. (In re DBSI),* 501 B.R. 37 (Bankr. Ct. D. Del. 2013)
4.    *In re Cendant Corp. PRIDES Litig*., 235 F.3d 176, 183 (3d Cir. 2000)

## III.    THE DEFENDANT HAS MERITORIOUS DEFENSES

Cases:
1.    *SEC V. McNulty*, 137 F.3d at 740 (2d. Cir. 1998) quoting Enron Oil, 10 F.3d at 98
2.    *Weisel v. Pischel*, 197 F.R.D. at 239 (E.D.NY. 2000)
3.    *Artmatic USA Cosmetics v. Maybelline Co.*, 906 F. Supp. 850, 855 (E.D.N.Y. 1995)
4.    *Arthur F. Williams, Inc. v. Helbig*, 208 F.R.D. at 45 (E.D.N.Y. 2002)
5.    *Pall Corp. v. Entegris, Inc.*, 249 F.R.D. 48 (E.D.N.Y. 2007)
6.    *Colangelo v. Eisen (In re Colangelo)*, 2009 U.S. Dist. LEXIS 30440 (E.D. Mich. Mar. 31, 2009)
7.    *Williams v. Meyer*, 346 F.3d 607, 614 (6th Cir. 2003)

## A.    THE TRANSFER IS A PAYMENT OF AN ANTECEDENT DEBT AND THEREFORE, THE DEBTORS WOULD BE UNABLE TO ESTABLISH THE ELEMENTS OF A FRAUDULENT CONVEYANCE UNDER U.S.C. §548

Cases:
1. *Burtch v. Opus, LLC (In re Opus E., LLC)*, 528 B.R. 30, 46 (Bankr. D. Del. 2015)
2. *In re Trades Publ'g Inc., Nos*. 10-21483 (MBK), 10-2531 (MBK), 2011 Bankr. LEXIS 4738, at \*23 (U.S. Bankr. D.N.J. Oct. 11, 2011)
3. *Mellon Bank, N.A. v. Official Comm. of Unsecured Creditors of R.M.L., Inc. (In re R.M.L., Inc.)*, 92 F.3d 139, 149 (3d   Cir. 1996)
4. *Pashaian v. Eccelston Props., Ltd*., 88 F.3d 77, 85 (2d Cir. 1996)
5. *Official Comm. of Unsecured Creditors v. Credit Suisse (In re Champion Enters.)*, Adv. No. 10-50514, 2010 Bankr. LEXIS 2720, 2010 WL 3522132, at \*18 (Bankr. D. Del. Sept. 1, 2010)
6. *HBE Leasing Corp. v. Frank*, 48 F.3d 623, 634 (2d Cir. 1995)
7. *Glassman v. Heimbach, Spitko & Heckman (In re Spitko)*, Nos. 04-18836bif, 05-0258, 2007 Bankr. LEXIS 2050, at \*48-49 (U.S. Bankr. E.D. Pa. June 11, 2007)
8. *In re Trades Publ'g Inc.,* Nos. 10-21483 (MBK), 10-2531 (MBK), 2011 Bankr. LEXIS 4738, at \*25 (U.S. Bankr. D.N.J. Oct. 11, 2011)
9. *Garrett v. Falkner (In re Royal Crown Bottlers, Inc.)*, 23 B.R. 28, 30 (Bankr. N.D. Ala. 1982)
10. *Tousa*, 444 B.R. at 658 citing *Rubin v. Mfr. Hanover Trust Co*., 661 F.2d 979, 991-92 (2d Cir. 1981)
11. *Mellon Bank, N.A. v. Metro Commc'n, Inc*., 945 F.2d 635, 646 (3d Cir. 1991), cert. denied, 503 U.S. 937, 112 S. Ct. 1476, 117 L. Ed. 2D 620 (1992)

## IV.   THE DEFENDANTS' FAILURE TO RESPOND TO THE COMPLAINT WAS DUE TO EXCUSABLE NEGLECT, AND WAS NOT WILFULL

Cases:
1. *Pioneer Inv. Servs. Co. v. Brunswick Associates, Ltd*., 507 U.S. 380, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993)
2. *Albicocco v. Albicoco, et al. (In re Albicocco)*, 2006 U.S. Dist. LEXIS 65359 (E.D.N.Y. September 13, 2006)
3. *In re American Classic Voyages Co*., 405 F.3d 127, 133 (3d Cir. 2005)
4. *In re XO Communs., Inc.*, 301 B.R. 782 (Bankr. S.D.N.Y. 2003)
5. *Zawadski de Bueno v. Bueno Castro*, 822 F.2d 416, 420 (3d Cir. 1987)
6. *Nara v. Frank*, 488 F.3d 187, 193-94 (3d Cir. 2007)

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Citadel Watford City Disposal Partners, L.P., *et al.*,[2]<br><br>Debtors.<br>-------------------------------------------------------<br>Citadel Watford City Disposal Partners, L.P., *et al*.<br><br>Plaintiffs,<br><br>v.<br><br>Peter Simons,<br><br>Defendant. | Chapter 11<br><br>Case No: 15-11323 (KJC)<br><br>(Jointly Administered)<br><br><br>Adversary Proceeding No. 16-51557 |

## MEMORANDUM OF LAW IN SUPPORT OF
## PETER SIMONS'
## MOTION TO REOPEN ADVERSARY
## PROCEEDING AND TO VACATE ENTRY OF
## DEFAULT [DOCKET #5] AND DEFAULT JUDGMENT [DOCKET #7]

Peter Simons (the "Defendant"), by and through the undersigned counsel, submit this Memorandum of Law in support of their Motion to Reopen Adversary Proceeding and to Vacate Entry of Default [Docket No. 5] and Default Judgment [Docket No. 7] (the "Motion") entered against him on January 30, 2017; the Affidavit of Defendant Peter Simons (the "Peter Aff.") and the exhibits attached thereto; and the Affirmation of Roland Gary Jones, Esq. (the "Jones Af.").

## **INTRODUCTION**

---

[2]     The Debtors and the last four digits of their respective tax identification numbers are: Citadel Energy Services, LLC (7762); Pembroke Fields, LLC (0341); Citadel Energy SWD Holdings, LLC (5266); Citadel Watford City Disposal Partners, LP (1520). The mailing address for each Debtor is: c/o Gavin/Solmonese LLC, 919 N. Market St., Ste. 600, Wilmington, DE 19801.

1.      The Defendant has meritorious defenses against the claims of the Complaint of Citadel Watford City Disposal Partners, L.P., et al. (the "Debtors"). Once advised that a default judgment had been entered against him, the Defendant immediately retained undersigned counsel Roland Gary Jones. Upon retention, Mr. Jones immediately reached out to the Debtors and commenced settlement negotiations.

2.      The settlement negotiations between the Defendant and the Debtors involved discussions in good faith, the provision of a legal brief and statistical analysis to the Debtors, and evidence in support of the Defendant's defenses. *Jones Af. ¶¶5-6.*

3.      Any lapse in time in the Defendant's filing of this Motion was caused by the settlement negotiations with the Debtors in the hopes of resolving the matter without the need of further litigation. However, it appears that this adversary proceeding cannot be resolved informally even after providing considerable evidence and legal analysis to the Debtors. As such, the Defendant thought it prudent to file the instant Motion

## PROCEDURAL BACKGROUND

4.      On June 19, 2015 (the "Petition Date"), the Debtors each commenced a case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code before the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

5.      On December 12, 2016, the Debtors commenced this adversary proceeding against the Defendant (the "Adversary Proceeding") with the filing of the Complaint (the "Complaint"). The Debtors sought to avoid and recover certain transfers, totaling $50,000.00 (the "Transfers"), allegedly made by one of the Debtors, Citadel Energy Services, LLC ("Citadel Energy"), as potentially constructive fraudulent transfers. [Docket No. 1]

6.      On January 30, 2017, the Plaintiff filed a request for entry of default against the

6

Defendant.  [Docket #4]

     **7.**     On January 30, 2017, the Clerk entered a default against the Defendant. [Docket #5]

     **8.**     On January 30, 2017, the Plaintiff filed a request for entry of default judgment against the Defendant. [Docket #6]

     **9.**     On January 30, 2017, the Court rendered a default judgment against the Defendant (the "Default Judgment"). [Docket #7]

     **10.**     On February 13, 2017, the Adversary Proceeding was closed.

## FACTUAL BACKGROUND

## I.     THE RELATIONSHIP BETWEEN THE DEBTORS AND THE DEFENDANT

     **11.**     Prior to the Petition Date, the Debtors provided a range of fluid management services to oil and gas producers, including the safe, controlled disposal of flowback and produced water. The Debtors operated in the Bakken Shale region of North Dakota and Montana. The Debtors' saltwater disposal facility ("Pembroke Facility") was available for saltwater and incidental non-hazardous oil and gas waste disposal. The Debtors also removed and sold the trace amount of oil that remains in the water disposed at the Pembroke Facility. *See ¶8 Complaint*

     **12.**     On information and belief, Citadel Energy is an acquisition & operations company that provides drilling services, well maintenance, trucking & logistics, utility locating, and damage prevention services to leading energy companies throughout North America.

     **13.**     Sometime in 2012, the Debtors applied for a $50,000.00 loan in order to increase their capital funds and get their business going. *See ¶3 Peter Aff.*

     **14.**     On November 2, 2012, the Defendant issued a check payable to the order of

"Citadel Energy Partners, LLC" ("Citadel Partners") in the amount of $50,000 (the "Loan"). Attached as *Exhibit "A"* to the *Peter Aff.* is a copy of the said check. *See ¶4 Peter Aff.*

15.    On information and belief, Citadel Partners is a Wyoming limited liability company owned by the same persons who own the Debtors. On information and belief, one of the owners of Citadel Partners is Stanton Dodson ("Dodson"). On information and belief, Dodson is also Citadel Partners' Managing Partner. *See ¶5 Peter Aff.*

16.    On information and belief, Dodson has been the alter ego of Citadel Partners. *Please see ¶14 of the Motion of the United States Trustee for the appointment of a Trustee, or in the alternative for the appointment of an examiner or the conversion of the cases to Chapter 7* dated August 5, 2015 *("U.S. Trustee Motion")*, which is attached as *Exhibit "D"* of this Motion.

17.    On information and belief, Dodson is the Founder, Executive Chairman and Managing Partner of Citadel Energy Services, LLC ("Citadel Service"), one of the debtors in this adversary proceeding.[3] *See ¶6 Peter Aff.*

18.    On July 3, 2014, the Debtors paid the Defendant the amount of $50,000 (the "Transfer"). This is the amount sought to be avoided by the Plaintiff and was intended as payment for the Loan taken by the Debtors last November 2, 2012. Attached as *Exhibit "B"* to the *Peter Aff.* are copies of the front and dorsal portions of the deposit ticket showing payment to me of the amount of $50,000. *See ¶7 Peter Aff.*

## II.    EVENTS LEADING TO THE DEFAULT JUDGMENT

19.    Sometime in December of 2016, Defendant received the Complaint. Upon receipt of such, the Defendant talked to Dodson, who told the Defendant that they had a lawyer based in

---

[3]    Company Overview of Citadel Energy Services, LLC, available at http://www.bloomberg.com/research/stocks/private/people.asp?privcapId=275305188 (last visited March 24, 2017, 12:13 AM ET).

Los Angeles who would respond to the Complaint for them as well as for the other defendants. *See ¶8 Peter Aff.*

20.    On January 5, 2017, sensing that the deadline was near, the Defendant asked for an update from Dodson about the response to the Complaint. Dodson informed the Defendant that their counsel was getting an extension of time to respond to the Complaint. *See ¶9 Peter Aff.*

21.    On January 16, 2017, the Defendant was notified by Dodson via e-mail that they have received an extension of time to respond to the Complaint. Attached as *Exhibit "C"* to the *Peter Aff.* is a copy of the aforementioned e-mail. *See ¶10 Peter Aff.*

22.    On February 2, 2017, the Defendant was notified of the default judgment rendered against him. The next day, the Defendant confronted Dodson about the default and informed him that he was very upset that their lawyer did not respond to the Complaint in time. It was then that the Defendant tried contacting Mr. Jones to represent him on this matter. *See ¶11 Peter Aff.*

23.    On February 7, 2017, Defendant retained Mr. Jones for the purpose of representing the Defendant and defending in the Adversary Proceeding. *See ¶12 Peter Aff; Jones Af. ¶5.*

24.    Upon retention, Mr. Jones made preparations to communicate with the Plaintiff and commence settlement negotiations. Thus, from February 13 to February 16, 2017, Mr. Jones reached out to previous counsel for the Plaintiff, Michael G. Busenkell ("Mr. Busenkell") of Gellert Scali Busenkell & Brown, LLC. Mr. Busenkell agreed to suspend the execution of the default judgment in this case for thirty days while counsels for both parties attempt to settle the underlying substantive issues. Mr. Busenkell also confirmed that he looks forward to receiving the Defendant's position statement. *Jones Af. ¶6.*

25.    On March 20, 2017, the Defendant through Mr. Jones provided Mr. Busenkell

through e-mail a copy of Defendant's Position Statement comprising of a legal brief detailing the merits of the Defendant's defenses and Defendant's Affidavit in support of the Position Statement. The Defendant, in addition to the brief, provided evidence in support of its defenses pursuant to Federal Rule of Evidence 408. *Jones Af. ¶7.*

26.     Subsequently on March 22, 2017, the new counsel for the Plaintiff, Thomas Horan ("Mr. Horan"), responded to Mr. Jones' e-mail, and informed him that he is now counsel to the Citadel Liquidation Trust, which has taken over prosecution of the Citadel adversary proceedings. Consequently, settlement discussions between Mr. Jones and Mr. Busenkell were cut short because the plaintiff changed counsel. *Jones Af. ¶8.*

27.     Subsequent discussions ensued pursuant to Federal Rule of Evidence 408 then ensued between Mr. Jones and Mr. Horan. *Jones Af. ¶9.*

28.     Despite extensive negotiations, it appears that this adversary proceeding cannot be resolved informally even after providing considerable evidence and legal analysis to the Plaintiff. As such, the Defendant thought it prudent to file the instant motion.

## SUMMARY OF RELIEF REQUESTED

29.     The Defendant respectfully requests this Honorable Court to enter an order reopening the Adversary Proceeding.

30.     The Defendant had no intent to ignore the complaint filed by the Debtors and fully intended to retain counsel in order to answer the complaint. The failure of the Defendant to respond to the Complaint was a result of excusable neglect. When the Defendant was advised of the Default Judgment on February 2, 2017, he immediately retained undersigned counsel Roland Gary Jones. Upon retention, Mr. Jones immediately reached out to the Plaintiff and commenced settlement negotiations.

**31.**    Also, any lapse in time in the Defendant's filing of this Motion to reopen the Adversary Proceeding was caused by the Defendant's extensive negotiations and provision of evidence to the Plaintiff, after Defendant had learned of the Default Judgment against him, in the hopes of resolving the matter without need of further litigation.

**32.**    Additionally, the Plaintiff will suffer no prejudice if the Default Judgment is vacated. About two months have passed between the entry of the Default Judgment and the filing of this Motion. There is no danger that any evidence may be lost. In fact, during this period, evidence was freely provided by the Defendant to the Debtors upon the latter's request. A two month period of delay in filing a motion to vacate a default judgment is legally insignificant. *Zazzali v. 1031 Exchange Group LLC et al. (In re DBSI),* 501 B.R. 37 (Bankr. Ct. D. Del. 2013).

## ARGUMENT IN FAVOR OF RE-OPENING THE ADVERSARY PROCEEDING

**I.    APPLICABLE LAW**

**33.**    Fed. R. Civ. P. 60(b) provides that "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

1)    mistake, inadvertence, surprise, or excusable neglect;

2)    newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

3)    fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

4)    the judgment is void;

5)      the judgment has been satisfied, released, or discharged; it is based on an

earlier judgment that has been reversed or vacated; or applying it

prospectively is no longer equitable; or

6)      any other reason that justifies relief.

**34.**      Fed. R. Civ. P. 60(c) subsequently provides that a party may move to vacate a

default due to mistake, inadvertence, surprise or excusable neglect within a year of the default.

**35.**      Fed. R. Civ. P. 60(b)(1) permits courts to reopen judgments for reasons of

mistake, inadvertence, surprise, or excusable neglect, but only on motion made within one year

of the judgment. Fed. R. Civ. P. 60(b)(6) goes further, however, and empowers the court to

reopen a judgment even after one year has passed for any other reason justifying relief from the

operation of the judgment. *Pioneer Investment Services Co. v. Brunswick Associates L.P.,* 507

U.S. 380, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993).

**36.**      Generally, entries of default and default judgments are disfavored by the courts,

and when a defendant moves to set aside the entry of default or a default judgment the law

therefore "require[s] doubtful cases to be resolved in favor of the party moving to set aside the

default judgment 'so that cases may be decided on their merits.'" *Church-El v. Bank of N.Y.*, Civil

No. 11-877 (D. Del., 2013) citing *United States v. $55,518.55 in U.S. Currency*, 728 F.2d 192,

194-95 (3d Cir. 1984).

**37.**      Defaults are particularly disfavored when substantial rights are implicated, or

when substantial sums of money are demanded. *Enron Oil Corp. v. Diakuhara,* 10 F.3d 90 (2nd

Cir. 1993).

**38.**      A default judgment is a "weapon of last resort, appropriate only when a party

willfully disregards pending litigation." *C.K.S. Eng'rs, Inc. v. White Mountain Gypsum Co.,* 726

F.2d 1202 (7th Cir. 1984).

**39.**     When considering an application to set aside a default, or a default judgment, a court "must consider the following three facts: (1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; and (3) whether the default was the result of the defendant's culpable conduct." *Gold Kist, Inc. v. Laurinburg Oil Co.*, 756 F.2d 14, 19 (3d Cir. 1985).

**40.**     The present motion to re-open the adversary proceeding and vacate default judgment was filed about two months from the date of the Default Judgment. It has been held that a two month period of delay in filing a motion to vacate a default judgment is legally insignificant. *Zazzali v. 1031 Exchange Group LLC et al. (In re DBSI),* 501 B.R. 37 (Bankr. Ct. D. Del. 2013).

## II.     THE PLAINTIFF WILL SUFFER NO PREJUDICE IF THE CASE WAS REOPENED AND THE DEFAULT JUDGMENT IS VACATED

**41.**     Prejudice, in the context of a motion to vacate a default judgment, is "the loss of evidence, increased potential for fraud or collusion, or a substantial reliance upon the judgment." *JPMorgan Chase Bank, N.A. v. Pandolfelli (In re Pandolfelli)*, 2012 U.S. Dist. LEXIS 19223, 6-8 (D.N.J. Feb. 14, 2012); *see also Smith v. PAC Int'l Logistics Co. (In re Advanced Mktg. Servs.)*, 448 B.R. 321, 327-330 (Bankr. D. Del. 2011). The cost of enforcing a judgment later vacated and the delay in realizing satisfaction on a claim rarely serves to establish the degree of prejudice sufficient to prevent the opening of a default judgment. The loss of an advantageous position cannot be used to establish prejudice. *Smith v. PAC Int'l Logistics Co. (In re Advanced Mktg. Servs.)*, 448 B.R. 321, 327-330 (Bankr. D. Del. 2011).

**42.**     The burden of proving prejudice is on the Plaintiff. *Smith v. PAC Int'l Logistics*

*Co. (In re Advanced Mktg. Servs.)*, 448 B.R. 321, 327-330 (Bankr. D. Del. 2011) ("Here, the Plaintiff has not shown that he would be materially prejudiced if the default judgment is vacated.").

43.     About two months have passed between the entry of the Default Judgment and the filing of this Motion. There is no danger that any evidence may be lost. In fact, during this interregnum, evidence was freely provided by the Defendant to the Debtors upon the latter's request.

44.     A two month delay in filing a motion to vacate is legally insignificant as a matter of law. <u>See</u>, *Zazzali v. 1031 Exchange Group LLC et al. (In re DBSI),* 501 B.R. 37 (Bankr. Ct. D. Del. 2013) citing *In re Cendant Corp. PRIDES Litig*., 235 F.3d 176, 183 (3d Cir. 2000) (the "delay in bringing the Rule 60(b) motion was three weeks … [t]his delay was trivial in light of the one-year outer limit for bringing a Rule 60(b) motion . . . and under O'Brien, in which we concluded that a two month delay was insignificant as a matter of law").

## III.    THE DEFENDANT HAS MERITORIOUS DEFENSES

45.     One of the requirements for setting aside a default is that the moving party must have a meritorious defense. "In order to make a sufficient showing of a meritorious defense . . . the defendant need not establish his defense conclusively, . . . but must present evidence of facts that, 'if proven at trial, would constitute a complete defense.'" *SEC V. McNulty*, 137 F.3d at 740 (2d. Cir. 1998) (quoting Enron Oil, 10 F.3d at 98) (internal citation omitted); see also *Weisel v. Pischel*, 197 F.R.D. at 239 (E.D.NY. 2000) ("Likelihood of success is not the measure. [Plaintiffs'] allegations are meritorious if they contain ***'even a hint of a suggestion'*** which, if proven at trial, would constitute a complete defense") (citations omitted) (alteration in original); *Artmatic USA Cosmetics v. Maybelline Co.*, 906 F. Supp. 850, 855 (E.D.N.Y. 1995) ("A party's

14

defense may be meritorious if the defense raises a significant issue; a party need not establish the merits of the defense conclusively.") (citation omitted). Although more than mere "conclusory denials" is required to establish a meritorious defense, *Enron Oil*, 10 F.3d at 98, as long as the defense is "potentially viable," it will be adequate to warrant setting aside the entry of default. *Arthur F. Williams, Inc. v. Helbig*, 208 F.R.D. at 45 (E.D.N.Y. 2002) (denying plaintiffs motion for a default judgment in part due to the defendant's "potentially viable" defense) (citation omitted)" *Pall Corp. v. Entegris, Inc.*, 249 F.R.D. 48 (E.D.N.Y. 2007).

46.      Ambiguous or disputed facts must be construed in the light most favorable to the defaulted party when testing the meritoriousness of a proposed defense. *Colangelo v. Eisen (In re Colangelo)*, 2009 U.S. Dist. LEXIS 30440 ( E.D. Mich. Mar. 31, 2009) citing *Williams v. Meyer*, 346 F.3d 607, 614 (6th Cir. 2003).

47.      If the Defendant is given an opportunity to present an Answer, the Defendant could prevail against the Plaintiff's claim based on the defenses detailed below.

**A.    THE TRANSFER IS A PAYMENT OF AN ANTECEDENT DEBT AND THEREFORE, THE DEBTORS WOULD BE UNABLE TO ESTABLISH THE ELEMENTS OF A FRAUDULENT CONVEYANCE UNDER U.S.C. §548**

48.      Pursuant to 11 U.S.C. §548(a)(1)(B), the trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily -

(B) (i) <u>received less than a reasonably equivalent value in exchange</u>

for such a transfer or obligation; and

(ii)  (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;

(III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or

(IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business

49.     In the context of 11 U.S.C.S. § 548(a)(1)(B), the burden of proof is on the plaintiff to establish that less than reasonably equivalent value was received by the debtor for the allegedly fraudulent transfers. *Burch v. Opus, LLC (In re Opus E., LLC)*, 528 B.R. 30, 46 (Bankr. D. Del. 2015).

50.     Before determining whether a debtor received "reasonably equivalent value," a court must first look at what "value," if any, the debtor received in return for the transfer. *In re Trades Publ'g Inc.*, Nos. 10-21483 (MBK), 10-2531 (MBK), 2011 Bankr. LEXIS 4738, at *23 (U.S. Bankr. D.N.J. Oct. 11, 2011) citing *Mellon Bank, N.A. v. Official Comm. of Unsecured Creditors of R.M.L., Inc. (In re R.M.L., Inc.)*, 92 F.3d 139, 149 (3d Cir. 1996) ("[B]efore determining whether the value was 'reasonably equivalent' to what the debtor gave up, the court must make an express factual determination as to whether the debtor received any value at all."). Once this determination is made, the Court must then determine the scope and meaning of "reasonably equivalent value" as applied to the case before it.

51.      Payments made on account of valid antecedent debts are presumptively made for reasonably equivalent value. The Bankruptcy Code and Delaware statute both define "value" to include satisfaction of an antecedent debt. 11 U.S.C.S. § 548(d)(2)(A); Del. Code Ann. tit. 6, § 1304(a)(2). The general rule is that the satisfaction of a preexisting debt qualifies as fair consideration. *Burtch v. Opus, LLC (In re Opus E., LLC)*, 528 B.R. 30, 46 (Bankr. D. Del. 2015); see also *Pashaian v. Eccelston Props., Ltd.,* 88 F.3d 77, 85 (2d Cir. 1996) ("the general rule is that the satisfaction of a preexisting debt qualifies as fair consideration. . . ."); *Official Comm. of Unsecured Creditors v. Credit Suisse (In re Champion Enters.)*, Adv. No. 10-50514, 2010 Bankr. LEXIS 2720, 2010 WL 3522132, at *18 (Bankr. D. Del. Sept. 1, 2010) ("The Court agrees with Defendants that generally under the Fraudulent Conveyance Act, satisfaction of an antecedent debt is 'fair consideration' for a conveyance.") (citing *HBE Leasing Corp. v. Frank,* 48 F.3d 623, 634 (2d Cir. 1995)).

52.      In this case, the Debtors will be unable to meet its burden of proof under §548 because the Transfer is a payment for an antecedent debt. The Transfer was intended as satisfaction of the Debtors' debt which was incurred by Citadel Partners last November 2, 2012, and which was applied accordingly.

53.      In fact, a close perusal of the dorsal portion of the $50,000 deposit ticket shows the words "Citadel Energy Loan Pay" annotated therein. *See Exhibit "B" of Peter Aff.*

54.      While Citadel Partners is not part of the Debtors in this bankruptcy proceeding, it is owned by the same persons who own the Debtors. In particular, Dodson is the owner and Managing Partner of both Citadel Partners and Citadel Energy at the same time. As a matter of fact, Citadel Partners and Citadel Energy have been alleged to be alter egos of Dodson. *U.S. Trustee Motion ¶14.*

17

55.     Hence the payment of Citadel Energy to the Defendant resulted in the extinguishment of the debt of Citadel Partners to Defendant.

56.     Generally transfers made or obligations incurred (including guarantees) solely for the benefit of third parties do not furnish reasonably equivalent value. . . . However, exceptions to the general rule can be found where the debtor receives the benefit of the original consideration . . ., or where the debtor and third party 'are so related or situated that they share an identity of interests because what benefits one will, in such case benefit the other to some degree. *Glassman v. Heimbach, Spitko & Heckman (In re Spitko)*, Nos. 04-18836bif, 05-0258, 2007 Bankr. LEXIS 2050, at *48-49 (U.S. Bankr. E.D. Pa. June 11, 2007).

57.     The "identity of interest rule" recognizes that "if the debtor and the third party are so related or situated that they share an 'identity of interests,'" then "what benefits one will, in such case, benefit the other to some degree." *In re Trades Publ'g Inc.*, Nos. 10-21483 (MBK), 10-2531 (MBK), 2011 Bankr. LEXIS 4738, at *25 (U.S. Bankr. D.N.J. Oct. 11, 2011) citing *Garrett v. Falkner (In re Royal Crown Bottlers, Inc.)*, 23 B.R. 28, 30 (Bankr. N.D. Ala. 1982).

58.     Along these lines, the Second Circuit held in Rubin that in indirect benefit cases, the consideration given to the third person must ultimately confer an economic benefit upon the debtor, provided that the value received by the debtor approaches the value of the property transferred by the debtor. *Tousa*, 444 B.R. at 658 (citing *Rubin v. Mfr. Hanover Trust Co.*, 661 F.2d 979, 991-92 (2d Cir. 1981)). Likewise, the Third Circuit has held that indirect benefits can confer value for purposes of section 548(a)(2) of the Code where the court finds evidence of indirect potential or an intangible benefit, even if they are incapable of exact measurement and quantification. See *Mellon Bank, N.A. v. Metro Commc'n, Inc.*, 945 F.2d 635, 646 (3d Cir. 1991), cert. denied, 503 U.S. 937, 112 S. Ct. 1476, 117 L. Ed. 2d 620 (1992). *In re Trades Publ'g Inc.*,

Nos. 10-21483 (MBK), 10-2531 (MBK), 2011 Bankr. LEXIS 4738, at *26-27 (U.S. Bankr. D.N.J. Oct. 11, 2011).

59.     In the case at bar, due to the identity of interests between the Citadel Energy and Citadel Partners, the Transfers by Citadel Energy to the Defendant ultimately benefited Citadel Partners.

60.     To the extent that the Debtors seek to recover the Transfer amounting to $50,000 as potentially constructive fraudulent transfer, then the Defendant could not have received the Transfer through constructive fraud since the Transfer was a payment pursuant to an antecedent debt. Thus, the Transfer cannot be avoided as constructively fraudulent conveyances.

## B.     ADDITIONAL DEFENSES

61.     The Defendant's research is continuing at this point in time. However, the Defendant is of the opinion that it may also be able to assert additional affirmative defenses if it is permitted to file an Answer.

## IV.     THE DEFENDANT'S FAILURE TO RESPOND TO THE COMPLAINT WAS DUE TO EXCUSABLE NEGLECT, AND WAS NOT WILFULL

62.     In *Pioneer Inv. Servs. Co. v. Brunswick Associates, Ltd.,* 507 U.S. 380, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993) the Supreme Court adopted a two prong test for determining whether time should be extended based on excusable neglect. *See also Albicocco v. Albicoco, et al. (In re Albicocco),* 2006 U.S. Dist. LEXIS 65359 (E.D.N.Y. September 13, 2006) (recognizing the fact that *Pioneer* liberalized the excusable neglect standard).  First, the delay in filing must be due to neglect. *Id.* Second, the neglect must be excusable. *Id.*

63.     The determination as to what sorts of neglect will be considered "excusable" is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's

omission. *Pioneer Inv. Servs. Co. v. Brunswick Associates, Ltd.*, *supra*; *In re American Classic Voyages Co.,* 405 F.3d 127, 133 (3d Cir. 2005); *In re XO Communs., Inc.,* 301 B.R. 782 (Bankr. S.D.N.Y. 2003).

64.     The Third Circuit has directed that courts should not favor a default judgment. *Zazzali v. 1031 Exch. Group LLC (In re DBSI Inc.)*, 501 B.R. 37, 42 (Bankr. D. Del. 2013) citing *Zawadski de Bueno v. Bueno Castro*, 822 F.2d 416, 420 (3d Cir. 1987). Where the decision is a close-call "doubts should be resolved in favor of setting aside the default and reaching the merits." *Id*.

65.     Excusable neglect is an equitable concept, upon which the totality of the circumstances should be taken into account. *Zazzali v. 1031 Exch. Group LLC (In re DBSI Inc.)*, 501 B.R. 37, 42 (Bankr. D. Del. 2013) citing *Nara v. Frank*, 488 F.3d 187, 193-94 (3d Cir. 2007). Excusable neglect is not "limited to situations where the failure to timely file is due to circumstances beyond the control of the filer." *Pioneer*, 507 U.S. at 391.

66.     The Defendant had no intent to ignore the complaint filed by the Debtors and fully intended to retain counsel in order to answer the complaint. When the Defendant was advised of the Default Judgment on February 2, 2017 he communicated with and retained undersigned counsel Roland Gary Jones without unnecessary delay. Upon retention, Mr. Jones immediately reached out to the Plaintiff and commenced settlement negotiations. *Jones Af. ¶¶3-5.*

## V.     EQUITY CONSIDERATIONS FAVOR THE DEFENDANT

67.     In this present case, it would be inequitable to deny the Defendant its day in court. The default and closure of the Adversary Proceeding would grant the Debtors' estate a windfall it does not deserve when case law uniformly states that the payment of an antecedent debt does not

constitute fraudulent conveyance under section 548 of the Bankruptcy Code. Furthermore, reopening the case will not prejudice the Plaintiff's ability to litigate the case.

## CONCLUSION

For the above reasons, the Defendant requests that the Court enter an order similar in substance to the Proposed Order filed concurrently with the motion: (1) reopening the adversary proceeding; (2) setting aside the Entry of Default and Default Judgment entered against the Defendant; and (3) granting the Defendant thirty (30) days to file an Answer to the Complaint. The Defendant additionally requests for such other and further relief as this Court may deem just and proper.

Dated: May 1, 2017

Respectfully submitted,

**THE LAW OFFICE OF JAMES TOBIA, LLC**
By: */s/ James Tobia*
James Tobia, Esq. (#3798)
1716 Wawaset Street
Wilmington, DE 19806
Tel. (302) 655-5303
Fax (302) 656-8053
Email: jtobia@tobialaw.com

**and**

**JONES & ASSOCIATES**
Roland Gary Jones, Esq.
New York Bar No. RGJ-6902
1745 Broadway, 17th Floor
New York, NY 10019
Tel. (347) 862-9254
Fax (212) 202-4416
Email: rgj@rolandjones.com